United States District Court
Northern District of California

1

2                 UNITED STATES DISTRICT COURT

3            NORTHERN DISTRICT OF CALIFORNIA

4

5  FRESIA BASCONCELLO,               Case No.  16-cv-06307-PJH

6         Plaintiff,

7      v.                  **ORDER GRANTING MOTIONS TO DISMISS WITH LEAVE TO AMEND**

8  EXPERIAN INFORMATION         Re: Dkt. Nos. 30, 34, 52
    SOLUTIONS, INC., et al.,

9

10        Defendants.

11

12       Defendants Chase Bank USA, N.A. and Equifax, Inc.'s motions to dismiss came

13  on for hearing before this court on March 1, 2017.  Plaintiff Fresia Basconcello appeared

14  through her counsel, Elliot Gale.  Defendant Chase Bank USA, N.A. appeared through its

15  counsel, Andrew Soukup and Megan Rodgers.  Defendant Equifax, Inc. appeared

16  through its counsel, Thomas Quinn.  Non-moving defendant Experian Information

17  Solutions, Inc. appeared through its counsel, Ben Lee.  Non-moving defendant Keypoint

18  Credit Union did not appear.  Having read the papers filed by the parties and carefully

19  considered their arguments and the relevant legal authority, and good cause appearing,

20  the court hereby rules as follows.

21                      **BACKGROUND**

22  **A.**    **Chapter 13 Bankruptcy**

23       Chapter 13 bankruptcy allows debtors with regular income to "repay creditors in

24  part, or in whole, over the course of a three-to-five-year period."  In re Blendheim, 803

25  F.3d 477, 485 (9th Cir. 2015).  Under Chapter 13, the debtor proposes a debt repayment

26  plan that must comply with a number of statutory requirements.  Id. at 485–86.  "A

27  Chapter 13 debtor seeking a discharge typically proposes a plan in which the discharge

28  is granted at the end of the proceeding, after the debtor completes all required payments

under the plan." Id. at 486.  If the Chapter 13 plan satisfies all of the statutory requirements, the bankruptcy court approves or "confirms" the plan.  11 U.S.C. § 1325(a); In re Flores, 735 F.3d 855, 857 (9th Cir. 2013).

If the debtor makes the payments under the confirmed plan, the bankruptcy court will grant a discharge of the debts, which "releases debtors from personal liability on claims and enjoins creditors from taking any action against the debtor." Blendheim, 803 F.3d at 486–87.  "Many debtors, however, fail to complete a Chapter 13 plan successfully." Harris v. Viegelahn, 135 S. Ct. 1829, 1835 (2015).  If the debtor fails to make the required payments, he may either "convert [the] Chapter 13 case to a [bankruptcy] case under a different chapter," or dismiss the action. Blendheim, 803 F.3d at 487.  The effect of dismissal is to restore the legal status quo prior to the Chapter 13 filing:  "dismissal returns to the creditor all the property rights he held at the commencement of the Chapter 13 proceeding and renders him free to exercise any nonbankruptcy collection remedies." Id. at 487.

**B.      The Complaint**

The complaint in this case is one of more than two hundred similar actions in this district filed by the Sagaria Law, P.C. firm against consumer credit reporting agencies in late 2016.  All of these cases employ the same form complaint, with about a dozen paragraphs individualized for each plaintiff.  The remainder of the complaint, including the causes of action, is copied nearly verbatim in each case.

Plaintiffs in these cases are individuals who filed for Chapter 13 bankruptcy and allege that their debts were reported inaccurately in light of their confirmed Chapter 13 plan.  Experian Information Solutions, Inc. ("Experian"), Equifax, Inc. ("Equifax"), or both credit reporting agencies ("CRAs") are named as defendants.  Also named as defendants in most of the cases are "furnishers" of credit information, such as Chase Bank USA, N.A. ("Chase") and Bank of America, N.A. ("BANA").

The complaint accuses CRAs and furnishers of "ignor[ing] credit reporting industry standards for accurately reporting bankruptcies." Compl. ¶ 7.  Allegedly, this inaccurate

1    reporting is an effort to perpetuate the "myth" that filing for bankruptcy ruins consumers'

2    credit scores for years.  Compl. ¶¶ 3–7.

3         The complaint explains in some detail how a consumer's FICO credit score is

4    calculated, and how the score derives from information that furnishers report to CRAs.

5    Compl. ¶¶ 20–36.  Plaintiff then describes the Metro 2 credit reporting standards

6    promulgated by the Consumer Data Industry Association (the "Metro 2 standards" or

7    "CDIA guidelines"), which plaintiff alleges is the "industry standard for accurate credit

8    reporting."  Compl. ¶¶ 37–52.  The Metro 2 standards have different "CII indicator" codes

9    that are used to note the filing and discharge of Chapter 7 and 13 petitions.  Compl.

10   ¶¶ 55–62.  Plaintiff alleges that the CII indictor "D" is used when a Chapter 13 petition has

11   been filed, but no discharge yet entered.  Compl. ¶ 59.

12        The complaint alleges that, prior to the confirmation of a Chapter 13 plan, the

13   "accepted credit reporting standard" is to "report the outstanding balance amount as of

14   the date of filing" of the bankruptcy petition, and to note the bankruptcy filing with CII

15   indicator code D.  Compl. ¶¶ 73, 75, 76–77.  Post-confirmation, however, plaintiff alleges

16   that the balances should be updated to reflect the confirmed Chapter 13 plan.  Reporting

17   ongoing past due amounts and late payments, instead of only indicator D, is "not

18   generally accepted as accurate by the credit reporting industry."  Compl. ¶ 84.  Plaintiff

19   alleges that the industry standard is to "report the balance owed under the Chapter 13

20   plan terms," which is typically lower than the original amount, and to "report a $0.00

21   balance" if the confirmed plan does not call for any payments on that particular debt.

22   Compl. ¶¶ 80–81.

23        Basconcello filed for Chapter 13 bankruptcy protection on November 26, 2014.

24   Compl. ¶ 93.  Plaintiff's Chapter 13 plan was confirmed on January 28, 2015.  See No.

25   14-54752 Dkt. 18 (Bankr. N.D. Cal.).  Notably, however, Basconcello is currently in

26   default on her Chapter 13 plan.  Id. Dkt. 22.

27        Plaintiff ordered credit reports from the CRAs on March 30, 2016, and filed a

28   dispute letter with the CRAs alleging inaccuracies.  Compl. ¶¶ 111, 113–114.  On

United States District Court
Northern District of California

1   September 12, 2016, she ordered a second set of credit reports, but found that the

2   inaccuracies remained and that her credit score had improved only slightly.  Compl.

3   ¶¶ 116–117.

4          Plaintiff asserts two claims, one under the Fair Credit Reporting Act ("FCRA") and

5   one under the California Consumer Credit Reporting Agencies Act ("CCRAA").  The first

6   cause of action alleges that the furnishers and CRAs violated FCRA "by failing to conduct

7   a reasonable investigation and re-reporting misleading and inaccurate information."  This

8   cause of action relies repeatedly on the alleged failure of the CRAs and furnishers to

9   "comport with industry standards."  The second cause of action under CCRAA is made

10   only against the furnishers, alleging that they "intentionally and knowingly reported

11   misleading and inaccurate account information to the CRAs that did not comport with

12   well-established industry standards."

**DISCUSSION**

13

14   **A.     Legal Standard**

15          A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests for the

16   legal sufficiency of the claims alleged in the complaint.  Ileto v. Glock, Inc., 349 F.3d

17   1191, 1199–1200 (9th Cir. 2003).  To survive a motion to dismiss for failure to state a

18   claim, a complaint generally must satisfy the requirements of Federal Rule of Civil

19   Procedure 8, which requires that a complaint include a "short and plain statement of the

20   claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

21          A complaint may be dismissed under Rule 12(b)(6) for failure to state a claim if the

22   plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to

23   support a cognizable legal theory.  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699

24   (9th Cir. 1990).  The court is to "accept all factual allegations in the complaint as true and

25   construe the pleadings in the light most favorable to the nonmoving party."  Outdoor

26   Media Group, Inc. v. City of Beaumont, 506 F.3d 895, 899–900 (9th Cir. 2007).

27          Legally conclusory statements, not supported by actual factual allegations, need

28   not be accepted by the court.  Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009).  The

United States District Court
Northern District of California

1    allegations in the complaint "must be enough to raise a right to relief above the

2    speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations

3    and quotations omitted).  "A claim has facial plausibility when the plaintiff pleads factual

4    content that allows the court to draw the reasonable inference that the defendant is liable

5    for the misconduct alleged." Iqbal, 556 U.S. at 678 (citation omitted).  "[W]here the well-

6    pleaded facts do not permit the court to infer more than the mere possibility of

7    misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is

8    entitled to relief.'" Id. at 679.  In the event dismissal is warranted, it is generally without

9    prejudice, unless it is clear the complaint cannot be saved by any amendment.  See

10   Sparling v. Daou, 411 F.3d 1006, 1013 (9th Cir. 2005).

**B.    Legal Analysis**

12         Defendants seek dismissal on three different grounds.  First, they argue that

13   plaintiff is judicially estopped from asserting her claims because she failed to disclose the

14   claims as a contingent asset in the bankruptcy court.  Second, they argue that the

15   complaint fails to plead an "inaccuracy" in reporting that is actionable under FCRA as a

16   matter of law.  Third, they argue that the complaint fails to sufficiently allege either actual

17   or statutory damages.

**1.    Judicial Estoppel**

19         "Judicial estoppel is an equitable doctrine that precludes a party from gaining an

20   advantage by asserting one position, and then later seeking an advantage by taking a

21   clearly inconsistent position." Hamilton v. State Farm Fire & Cas. Co., 270 F.3d 778, 782

22   (9th Cir. 2001).  The Supreme Court has articulated three factors to guide the court's

23   discretion: (1) whether a party's later position is "clearly inconsistent"' with its earlier

24   position; (2) whether that party has succeeded in persuading a court to accept its earlier

25   position; and (3) whether the party seeking to assert an inconsistent position would derive

26   an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

27   New Hampshire v. Maine, 532 U.S. 742, 750–51 (2001).

28

United States District Court
Northern District of California

United States District Court
Northern District of California

1    In the bankruptcy context, the Ninth Circuit has adopted "a basic default rule: If a

2    plaintiff-debtor omits a pending (or soon-to-be-filed) lawsuit from the bankruptcy

3    schedules and obtains a discharge (or plan confirmation), judicial estoppel bars the

4    action." Ah Quin v. Cnty. of Kauai Dep't of Transp., 733 F.3d 267, 271 (9th Cir. 2013).

5    The logic is straightforward: by not listing the lawsuit in the bankruptcy schedules, the

6    debtor represented that the asset did not exist.  The bankruptcy court accepted that

7    position in its confirmation or discharge order, and the claim was hidden from the

8    bankruptcy estate to the detriment of the creditors and advantage of the debtor.  Id.

9    Thus, "a party is judicially estopped from asserting a cause of action not raised in

10   a reorganization plan or otherwise mentioned in the debtor's schedules or disclosure

11   statements." Hamilton, 270 F.3d at 783.  If a cause of action is not known at the time of

12   the bankruptcy filing, judicial estoppel "will be imposed when the debtor has knowledge of

13   enough facts to know that a potential cause of action exists during the pendency of the

14   bankruptcy, but fails to amend his schedules or disclosure statements to identify the

15   cause of action as a contingent asset." Id. at 784.

16   In this case, the court declines to exercise its discretion to estop plaintiff because

17   only two of the three New Hampshire factors have been established.  There is little doubt

18   that plaintiff's positions in this court and the bankruptcy court—"a claim does not exist"

19   versus "a claim does exist"—are inconsistent.  See Ah Quin, 733 F.3d at 271.  Moreover,

20   should plaintiff ultimately obtain a discharge, she would have (at least arguably) obtained

21   an "unfair advantage."  See Benetatos v. Hellenic Republic, 371 F. App'x 770, 771 (9th

22   Cir. 2010) (affirming estoppel ruling based on Chapter 13 discharge).  However,

23   defendants have not established that the bankruptcy court ever "accepted" the plaintiff's

24   position.  Typically, acceptance is accomplished either through a confirmation order or a

25   discharge order.  See In re An-Tze Cheng, 308 B.R. 448, 453 (B.A.P. 9th Cir. 2004)

26   ("Among other possibilities, the grant of a discharge (even if later revoked) or the

27   confirmation of a plan may constitute sufficient 'acceptance' of the accuracy of schedules

28   so as to permit judicial estoppel.").

United States District Court
Northern District of California

1      Here, by definition, the claims did not accrue until <u>after</u> confirmation.  Thus, plaintiff

2   could not possibly have listed the claims as a contingent asset when she initially filed for

3   Chapter 13 bankruptcy.  Arguably, plaintiff should have supplemented or amended her

4   schedules to disclose her FCRA and CCRAA claims to the bankruptcy court as a

5   contingent asset.  <u>See</u> Fed. R. Bankr. P. 1007(h) (debtor's duty to file a supplemental

6   schedule within 14 days of acquisition of an interest in property); <u>see also</u> 11 U.S.C.

7   § 512(a)(1).  Nonetheless, plaintiff has not received a discharge, so there has been no

8   acceptance of the plaintiff's position by the bankruptcy court.  <u>See</u> <u>Stewart v. Bank of</u>

9   <u>Am., N.A.</u>, No. 16-CV-05322-JST, 2016 WL 7475613, at *8 (N.D. Cal. Dec. 28, 2016)

10   (estoppel inappropriate when "[t]here has been no confirmation of a modified plan,

11   issuance of a new scheduling order, or discharge of Plaintiffs' debts on reliance of the

12   [non-disclosed claims.]"); <u>Keller v. Experian Info. Sols., Inc.</u>, No. 16-CV-04643-LHK, 2017

13   WL 130285, at *9 (N.D. Cal. Jan. 13, 2017) (declining to estop plaintiff because "at this

14   time, the Court does not have enough information to know whether the bankruptcy court

15   has 'accepted' Plaintiff's position").  Moreover, it is not clear that plaintiff's failure to

16   amend the schedules disadvantaged the creditors in a significant way, given that the

17   potential damages here are likely nominal.

18      The facts of <u>Hamilton</u>, upon which defendants rely, are readily distinguishable.

19   The debtor in <u>Hamilton</u> was aware of the claims at issue prior to filing for bankruptcy,

20   knowingly failed to report them, and ultimately received a Chapter 7 discharge.  270 F.3d

21   at 781.  More on point is the recent decision in <u>Momoh v. Wells Fargo Bank NA</u>, which

22   addressed a claim under the Telephone Consumer Protection Act that arose post-

23   confirmation.  <u>See</u> No. 15-cv-04729-HSG, 2016 U.S. Dist. LEXIS 86276, at *2–3 (N.D.

24   Cal. July 1, 2016).  <u>Momoh</u> held that estoppel was inappropriate because "the bankruptcy

25   court has not taken any formal action since Plaintiff's plan was confirmed . . . and thus

26   never acted in reliance upon Plaintiff's omission of these claims."  <u>Id.</u> at *11.

27      For these reasons, the court finds that the application of judicial estoppel is

28   inappropriate and declines to estop plaintiff from asserting her claims.

### 2.      Actual Inaccuracy under FCRA

Defendants' primary basis for dismissal is that the complaint fails to allege any "inaccuracy" under FCRA.  Plaintiff's FCRA claims are made pursuant to 15 U.S.C. §§ 1618s-2(b) and 1618i-a(1).  Under § 1618i-a(1), after receiving notice of a dispute from a consumer, a CRA must "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information."  15 U.S.C. § 1618i-a(1).  Under § 1618s-2(b), after receiving a notice of dispute from a CRA, a furnisher must conduct a reasonable investigation with respect to the disputed information and report the results to the CRA.  Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1154, 1157 (9th Cir. 2009).  FCRA creates a private right of action for willful or negligent noncompliance with these requirements.  Id. at 1154.

To state an FCRA reinvestigation claim, a plaintiff must show that: (1) he found an inaccuracy in his credit report; (2) he notified a CRA; (3) the CRA notified the furnisher of the information about the dispute; and (4) the furnisher and/or CRA failed to reasonably investigate the inaccuracies.  Biggs v. Experian Info. Sols., Inc., No. 5:16-CV-01507-EJD, 2016 WL 5235043, at *1 (N.D. Cal. Sept. 22, 2016); Gorman, 584 F.3d at 1154–57.  Although the complaint does not allege specific facts about the furnishers' and/or CRAs' investigations, plaintiff does allege generally that any reasonable investigation would have revealed that the reporting was not in compliance with industry standards.

Inaccuracy is a required element of these FCRA claims.  Carvalho v. Equifax Info. Servs., LLC, 629 F.3d 876, 890 (9th Cir. 2010) ("Although the FCRA's reinvestigation provision, 15 U.S.C. § 1681i, does not on its face require that an actual inaccuracy exist for a plaintiff to state a claim, many courts, including our own, have imposed such a requirement."); Gorman, 584 F.3d at 1163 ("[A] furnisher does not report 'incomplete or inaccurate' information within the meaning of § 1681s–2(b) simply by failing to report a meritless dispute.").  To be inaccurate, information must be either "patently incorrect" or "misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions."  Gorman, 584 F.3d at 1163.

The complaint alleges several different types of inaccuracies.  Plaintiff's primary legal theory is that, after a Chapter 13 plan is confirmed, it is inaccurate to report that an account is delinquent or to report the loan balance per the original loan terms.  Rather, the lower amount owed per the confirmed Chapter 13 plan must be reported instead.  Second, plaintiff alleges that credit reporting that fails to comply with the Metro 2 standards is necessarily inaccurate.  Finally, plaintiff alleges various other inaccuracies, such as failing to report a CII D indicator, reporting a debt as "in collections" or "charged off" despite the confirmed plan, and/or the failure to report that an account is being disputed.

### i.   Reporting Pre-confirmation Account Balances and Delinquencies During the Pendency of Bankruptcy

Plaintiff's primary theory of inaccuracy is premised on the effect that the confirmed Chapter 13 plan has on plaintiff's debts.  Plaintiff argues that, prior to confirmation, the industry standard is to report the outstanding balance on the loan at the time the bankruptcy petition was filed, and to note the bankruptcy filing with the CII D indicator.  After a Chapter 13 plan is confirmed, however, plaintiff argues that because the confirmation order is a binding "final judgment" that modifies the status of the debt, it is inaccurate to continue reporting the outstanding balance per the original loan terms.  Rather, the amount required to be paid to obtain a discharge under the Chapter 13 plan must be reported, with a loan balance of $0.00 reported if the confirmed plan does not call for any payments on that debt.

Plaintiff's legal theory of inaccuracy is not a novel issue in this district.  The unanimous view of the judges in this district that have considered the matter is that, at least prior to discharge, reporting a loan balance and delinquent status per the original terms—as opposed to the modified terms of the confirmed Chapter 13 plan—is neither inaccurate nor misleading under FCRA.  See, e.g., Doster v. Experian Info. Sols., Inc., No. 16-CV-04629-LHK, 2017 WL 264401, at *4–*5 (N.D. Cal. Jan. 20, 2017) ("[A]lthough reporting delinquent payments may be misleading if the debts have been discharged in

bankruptcy, 'it is not misleading or inaccurate to report delinquent debts that have not been discharged' . . . . [because] the legal status of a debt does not change until the debtor is discharged from bankruptcy.") (collecting cases); Biggs, 2016 WL 5235043, at *2 ("Courts in this district have held that the FCRA does not prohibit the accurate reporting of debts that were delinquent during the pendency of a bankruptcy action . . . so long as the bankruptcy discharge is also reported if and when it occurs."); Blakeney v. Experian Info. Sols., Inc., No. 15-CV-05544-LHK, 2016 WL 4270244, at *5 (N.D. Cal. Aug. 15, 2016) ("[C]ourts in this district have consistently held that it is not misleading or inaccurate to report delinquent debts that have not been discharged."); Mortimer v. JP Morgan Chase Bank, N.A., No. C 12-1936 CW, 2012 WL 3155563, at *3 (N.D. Cal. Aug. 2, 2012) ("While it might be good policy in light of the goals of bankruptcy protection to bar reporting of late payments while a bankruptcy petition is pending, neither the bankruptcy code nor the FCRA does so."); Harrold v. Experian Info. Sols., Inc., 2012 WL 4097708, at *4 (N.D. Cal. Sept. 17, 2012) ("[R]eports of delinquencies in payment while bankruptcy proceedings are still ongoing is not 'incomplete or inaccurate' information.").

These decisions, of course, are not binding on this court. Nonetheless, the court finds their reasoning to be persuasive. Although the Chapter 13 plan and the bankruptcy petition may limit the collection activities of creditors, it does not mean that an "individual is not obliged to make timely payments on his accounts while his petition for bankruptcy is pending." Mortimer, 2012 WL 3155563 at *3. Because "the debt and its delinquent status still exist . . . it is not inaccurate or misleading to report that information to a CRA." Biggs, 2016 WL 5235043 at *2. The court therefore finds that, at least when the bankruptcy filing and the account's disputed nature are noted, reporting balances and delinquencies per the original loan terms is neither "patently incorrect" nor "misleading." See Gorman, 584 at 1163.

Plaintiff's contrary arguments miss the mark. Plaintiff's repeated themes that the confirmed plan is a "final judgment" with "res judicata effect" or a "new contract" obscure the issues. To be sure, a confirmed plan may have res judicata effects on some creditor

United States District Court
Northern District of California

claims that could have been brought in the bankruptcy proceeding.  See, e.g., In re Brawders, 503 F.3d 856, 867 (9th Cir. 2007) (res judicata precludes collateral attack on confirmation order).  The fact that a confirmed plan may have res judicata effects, however, does not imply that reporting the debts per their original terms is therefore "misleading" under FCRA.  See Jaras v. Experian Info. Sols., Inc., No. 16-CV-03336-LHK, 2016 WL 7337540, at *4 (N.D. Cal. Dec. 19, 2016) ("[E]ven if a confirmation order constitutes a final judgment, it constitutes a final judgment only as to the manner in which the debtor will discharge his financial obligations, not the legal validity of the debt.") (quotations omitted).  Similarly, although a Ninth Circuit bankruptcy appeals panel has analogized a confirmed Chapter 13 plan to a "contract," In re Than, 215 B.R. 430, 435 (B.A.P. 9th Cir. 1997), that does not mean that this "contract's" promises govern how credit information must be reported under FCRA.  A more natural understanding of the terms of the new contract is that it sets the conditions by which debtors may obtain a discharge.  Jaras, 2016 WL 7337540, at *4.  In short, a confirmed plan does not dictate how historical credit information must be reported under FCRA.

Plaintiff also relies on a statutory argument based on the effect of 11 U.S.C. sections 1332(b)(2) and 1337(a) and a "critical distinction" between the terms "debt" and "claim" as used in the Bankruptcy Code.  Section 1332(b)(2) provides that a confirmed plan may "modify the rights of . . . holders of unsecured claims," and section 1137(a) establishes that a confirmed plan "bind[s] the debtor and each creditor."  11 U.S.C. §§ 1332(b), 1337(a).  Plaintiff asserts, without citation to authority, that "claims" constitute a creditor's calculation of the balance due prior to litigation, whereas a "debt" constitutes the balance owed post-litigation.  This claim/debt distinction is significant because furnishers do not report debts per se, but only claims.  And it is the claim, not the debt, that is modified in a confirmed Chapter 13 plan by operation of sections 1332(b)(2) and 1337(a).  Thus, because creditors are reporting "claims" and the confirmed plan has "modified" those claims, reporting must change post-confirmation.

United States District Court
Northern District of California

This argument can be quickly dismissed because it relies so heavily on a purported distinction between "claims" and "debts."  However, Congress intended that "the meanings of 'debt' and 'claim' be coextensive."  Penn. Dep't of Pub. Welfare v. Davenport, 495 U.S. 552, 558 (1990); accord In re Davis, 778 F.3d 809, 813 (9th Cir. 2015).  Plaintiff is correct that a Chapter 13 plan may "modify" the claims of creditors, 11 U.S.C. § 1332(b)(2), and that, upon confirmation, the plan binds debtor and creditor, 11 U.S.C. § 1327(a).  While these sections may prevent creditors from collecting on a loan pursuant to the original terms while the bankruptcy petition is pending, it does not follow that reporting those terms is necessarily "misleading" under FCRA.  "[T]he debt and its delinquent status still exist" prior to discharge.  Biggs, 2016 WL 5235043 at *2.

For the foregoing reasons, the court finds that, as a matter of law, the complaint fails to state a claim under FCRA to the extent that the alleged "inaccuracy" is premised on either (i) reporting the accurate outstanding balance as per the original terms, instead of the loan balance as modified by a Chapter 13 plan; or (ii) reporting a balance as delinquent or past due, if delinquency is factually accurate per the original loan terms.

### ii.    Whether Noncompliance with Metro 2 Standards Necessarily Renders Reporting "Misleading"

Plaintiff also alleges that the reporting is inaccurate because it does not comport with the credit reporting industry's Metro 2 standards.

Again, this issue is not a novel one in this district.  Other courts have found that noncompliance with Metro 2 standards, standing alone, does not make otherwise factually accurate reporting "misleading."  Giovanni v. Bank of Am., Nat. Ass'n, No. C 12-02530 LB, 2013 WL 1663335, at *6 (N.D. Cal. Apr. 17, 2013) (failure to comply with Metro 2 standards is not misleading because the complaint "does not allege that [the furnisher] was required to follow the Metro 2 Format . . . or that deviation from those instructions constitutes an inaccurate or misleading statement."); Mortimer, 2013 WL 1501452, at *12 (N.D. Cal. Apr. 10, 2013) ("[A]lleged noncompliance with the Metro 2 Format is an insufficient basis to state a claim under the FCRA."); cf. Nissou-Rabban v.

United States District Court
Northern District of California

Capital One Bank (USA), N.A., 2016 WL 4508241, at *5 (S.D. Cal. June 6, 2016) ("[D]eviation from Metro 2, the industry standard and its chosen method of reporting, may be misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions.") (quotation omitted) (emphasis added).

This court finds that noncompliance with Metro 2 standards does not, in and of itself, render reporting misleading.  FCRA does not mandate compliance with Metro 2 or any other particular set of industry standards.  Rather, the test is whether a reasonable potential creditor would find the reporting "misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions."  Gorman, 584 F.3d at 1163.  This requires something more than the mere fact of noncompliance with an industry standard, although noncompliance may be relevant to whether reporting is "misleading."  The context of the reporting must be considered.

For example, Judge Chen recently observed that "reporting of the bankruptcy filing substantially diminishes the argument that failure to comply with Metro 2 reporting format could be misleading."  Mestayer v. Experian Info. Sols., Inc., No. 15-CV-03645-EMC, 2016 WL 3383961, at *2 (N.D. Cal. June 20, 2016).  If the bankruptcy filing is noted on the credit report, and it is clear to a reasonable potential creditor that the balances reported are the original loan terms (not the balances as modified by the Chapter 13 plan), then there is nothing inherently misleading about the reporting.  See id.  Even accepting plaintiff's allegation that Metro 2 is the generally-accepted industry standard, noncompliance does not necessarily make reporting "misleading" if a reasonable creditor is able to accurately interpret the reporting in context.

Thus, to the extent that the complaint seeks to allege inaccuracies based only on the fact of noncompliance with Metro 2, the motions to dismiss must be granted. However, because additional allegations could save the Metro 2 theory, the court will provide plaintiff leave to amend to plead additional facts that explain why the noncompliance with Metro 2 guidelines would be actually misleading in context.

///

### iii.    Other Alleged Inaccuracies

Several of plaintiff's allegations seek to assert inaccuracies that do not fall into either of the two categories described above.  In particular, plaintiff alleges that defendants' failure to report a CII D indicator, failure to note that an account is being disputed, and/or reporting a debt as "in collections"/"charged off" are inaccurate.  The court finds that several of these inaccuracies may state a claim under FCRA, but that the complaint's allegations are too conclusory as currently pleaded.

The first issue is whether the failure to report a CII D indicator, or to otherwise note that a bankruptcy petition has been filed, makes reporting "inaccurate" under FCRA.  The court finds that the complaint could state a claim on this basis.  If the fact of the bankruptcy is not noted, the reporting may be misleading, because the existence of a bankruptcy filing is information that could affect the decision-making of potential creditors.  See, e.g., Doster, 2017 WL 264401, at *6 (granting leave to amend to support allegations that the credit report "contained no indication at all that the debts were the subject of a pending bankruptcy").  Moreover, the omission of the bankruptcy filing from a credit report may render other aspects of the reporting misleading.  For example, if a creditor sees that an account is "in collections," but no bankruptcy filing is noted, the creditor may believe that the account is being actively collected upon even though collection efforts have been stayed by the bankruptcy.  The same is true regarding the alleged failure to report that an account is being disputed.  This is information that could also adversely influence credit decisions if omitted.

As to the allegations that accounts were reported as "in collections" or "charged off," the complaint does not contain enough detail to determine whether this inaccuracy could state a claim under FCRA.  Without more context, it is not clear whether plaintiff claims that the furnishers are reporting that the account is currently in collections (which is potentially misleading in light of the bankruptcy stay) or simply that the account was in collections at some point in the past.  The latter would not be misleading, assuming that it is factually accurate and that the bankruptcy filing is noted.

United States District Court
Northern District of California

In summary, although the court finds that these alleged inaccuracies could state a claim under FCRA, the complaint as pleaded is too conclusory to tell.  With only a few sentences devoted to each disputed account, it is not clear whether a reasonable potential creditor could actually be misled.  It is not clear, for example, if there is any other information in the credit report that discloses the existence of the bankruptcy filing.  Thus, the court will provide plaintiff leave to amend to plead additional factual detail to state a plausible claim that these alleged inaccuracies were misleading in context.

### iv.   Whether the Effect of Confirmation Is a Nonactionable Dispute over the "Legal Validity" of a Debt

In the alternative, defendants argue that FCRA only permits claims based on inaccuracies that are <u>factual</u> in nature, but all of plaintiff's alleged inaccuracies are disputes about the "legal status" of the debt.  Defendants rely on the Ninth Circuit's decision in <u>Carvalho v. Equifax</u>, which held that "reinvestigation claims are not the proper vehicle for collaterally attacking the legal validity of consumer debts."  <u>Carvalho v. Equifax Info. Servs., LLC</u>, 629 F.3d 876, 892 (9th Cir. 2010); <u>see also</u> <u>Chiang v. Verizon New England Inc.</u>, 595 F.3d 26, 38 (1st Cir. 2010) ("[Under FCRA,] a plaintiff's required showing is <u>factual</u> inaccuracy, rather than the existence of disputed legal questions.").  Defendants argue that the complaint here relies entirely on the impact that a confirmed Chapter 13 plan has upon the legal status of the debt, and that this sort of dispute is not actionable as an FCRA reinvestigation claim.

Defendants' argument appears to be directed primarily at plaintiff's first theory of inaccuracy: the effect of a confirmed Chapter 13 plan upon loan balances and delinquencies.  Whatever merit this argument might have in that context, the court need not reach the issue because it has already held that this alleged "inaccuracy" does not state a claim as a matter of law.

To the extent that defendants seek to characterize other alleged inaccuracies in this case as disputes about the "legal validity" of a debt, their argument fails.  <u>Carvalho</u>'s holding is premised on the idea that CRAs are "not tribunals," and "are ill equipped to

adjudicate contract disputes." 629 F.3d at 891.  Reporting that a debtor has filed for bankruptcy protection on a credit report does not require furnishers and CRAs to engage in a "tribunal"-like legal analysis.  Either the debtor has filed for bankruptcy protection, or he has not, as a matter of fact.  The same logic applies to the alleged failure to note that an account was disputed.  The court therefore declines to dismiss the complaint on this ground.

<strong>v.       Application to Inaccuracies Alleged in the Complaint</strong>

In this case, plaintiff alleges inaccuracies concerning two accounts.  Chase is reporting a $3,546 balance, even though $0 is owed per the confirmed Chapter 13 plan.  Compl. ¶ 119.  This account is also inaccurately reported as "in collections [and] charged off" and Chase fails to list the "correct CII D indicator."  <u>Id.</u>  Keypoint Credit Union is reporting a balance of $14,209, which should be lowered to $5,700.37 pursuant to the terms of the Chapter 13 plan; moreover, Keypoint Credit Union "fails to note that the account is being disputed."  Compl. ¶ 120.  The CRAs failed to conduct a reasonable investigation and to delete the allegedly inaccurate information on these accounts.  Compl. ¶¶ 134, 126, 143.

As the court has explained, the alleged "inaccuracies" relying on the effect of the confirmed Chapter 13 plan on the account balances are not actionable if the amount reported is factually accurate per the original loan terms.  However, plaintiff also alleges that the CII D indicator is not listed on her Chase account, and that no dispute is noted concerning the Keypoint Credit Union account.  Compl. ¶¶ 119–120.  These inaccuracies may state a claim, if supplemented with additional factual detail as to why this reporting was misleading in context.

### 3.       Whether Damages Have Been Sufficiently Pleaded

Defendants' final basis for dismissal is that the complaint does not sufficiently plead either actual or statutory damages.  While the court ultimately agrees with defendants on this point, it will provide plaintiff leave to amend to supplement her damages allegations.

United States District Court
Northern District of California

1

### i.    Statutory Damages

2      Statutory and punitive damages are only available under FCRA when a defendant

3  "willfully fails to comply with" the law.  15 U.S.C. § 1681n(a)(1)(A); Syed v. M-I, LLC, No.

4  14-17186, 2017 WL 242559, at *7 (9th Cir. Jan. 20, 2017).  If a defendant's

5  noncompliance is merely negligent, plaintiff is entitled only to "any actual damages

6  sustained by the consumer as a result [of noncompliance]."  15 U.S.C. § 1681o(a)(1).

7      To support her claim for statutory damages, plaintiff alleges that the furnishers

8  "intentionally and knowingly reported misleading and inaccurate account information to

9  the CRAs that did not comport with well-established industry standards."  Both the CRAs

10  and furnishers "failed to conduct a reasonable investigation" and "would have known" that

11  their reporting did not comport with industry standards.

12      In Safeco Insurance Company of America v. Burr, 551 U.S. 47 (2007), the

13  Supreme Court held that "willfully," as used in FCRA, encompasses knowing violations or

14  a "reckless disregard of statutory duty."  Id. at 57.  However, Safeco further held that a

15  violation of FCRA was neither willful nor reckless when it relied on an interpretation of law

16  that "albeit erroneous, was not objectively unreasonable."  Id. at 69.  Defendants claim

17  that this "safe harbor" precludes statutory damages here, arguing that their understanding

18  of what FCRA required in this context is objectively reasonable and has been

19  unanimously adopted by courts in this district.

20      Plaintiff appears to concede that statutory damages are not available by not

21  responding to the defendants' "willfulness" argument in the briefing.  The court finds that

22  statutory damages are not available as to plaintiff's first theory of inaccuracy—the effect

23  of the confirmed Chapter 13 plan on account balances and delinquencies.  Given the

24  body of law in this district against plaintiff's primary theory of liability, defendants'

25  understanding of their FCRA obligations was not "objectively unreasonable" on this point.

26  Safeco, 551 U.S. at 69.

27      Plaintiff's willfulness allegations appear to derive from the noncompliance with

28  Metro 2 standards.  The ostensible argument is that statutory damages are available

17

because defendants knew about the industry standards and intentionally chose not to follow them.  However, the fact that defendants were aware of the industry standards does not mean that they were aware that compliance with industry standards was mandated by FCRA (indeed, it is not).  Thus, defendants could be knowledgeable about Metro 2 standards, but choose not follow them, which would not render their violations willful.

The court therefore concludes that the complaint as pleaded does not sufficiently allege statutory damages.  It is not clear to the court, however, that amendment would be futile, especially with respect to the inaccuracies that this court has found are potentially actionable.  The court will therefore provide plaintiff leave to amend to attempt to plead facts showing that defendants acted "willfully" as to these inaccuracies.

### ii.    Actual Damages

FCRA does not require allegations of a "denial of credit or transmission of the report to third parties" to establish actual damages.  Guimond v. Trans Union Credit Info. Co., 45 F.3d 1329, 1333 (9th Cir. 1995).  However, the law does require that plaintiff suffered some actual harm as a result of defendants' alleged FCRA violations.

Here, plaintiff alleges that as "a direct and proximate result of Defendants' willful and untrue communications,"  she "suffered actual damage including but not limited to inability to properly reorganize under Chapter 13, reviewing credit reports from all three consumer reporting agencies, time reviewing reports with counsel, sending demand letters, diminished credit score, and such further expenses in an amount later to be determined at trial."  It is not clear what plaintiff means by "inability to property reorganize under Chapter 13."  Plaintiff does not allege that defendants' reporting somehow interfered with the bankruptcy process.  Thus, whether actual damages have been pleaded hinges on whether a "diminished credit score," prelitigation attorneys' fees, or costs in reviewing credit reports and sending demand letters are recoverable as "actual damages."

United States District Court
Northern District of California

18

1      There is persuasive authority suggesting that a diminished credit score, standing

2   alone, does not represent actual damages.  King v. Bank of Am., N.A., No. C-12-04168

3   JCS, 2012 WL 4685993, at *6 (N.D. Cal. Oct. 1, 2012) ("[A] mere drop in Plaintiff's credit

4   score without any damages actually incurred would likely not satisfy the actual damages

5   requirement.") (citations omitted); Duarte v. J.P. Morgan Chase Bank, No.

6   CV131105GHKMANX, 2014 WL 12561052, at *4 (C.D. Cal. Apr. 7, 2014) ("Plaintiff

7   asserts that . . . the inevitable consequence of Defendant's alleged negative reporting—

8   impaired credit—constitutes actual damage for purposes of the CCRAA.  This is

9   incorrect.").  This is logical because, absent an allegation that plaintiff "was denied credit,

10  lost credit, had his credit limits lowered, or was required to pay a higher interest rate for

11  credit," the negative effects of a lowered credit score did not cause "actual" harm.  See

12  Young v. Harbor Motor Works, Inc., No. 2:07CV0031JVB, 2009 WL 187793, at *5 (N.D.

13  Ind. Jan. 27, 2009).

14     Moreover, plaintiff appears to concede that the costs associated with requesting a

15  credit report, discovering the alleged inaccuracies, and sending a dispute letter are not

16  recoverable.  The Ninth Circuit has not addressed this issue, but the Second Circuit has

17  held that "actual damages" may include "out-of-pocket expenses for attorney's fees

18  incurred by a plaintiff prior to litigation of his FCRA claims."  Casella v. Equifax Credit

19  Info. Servs., 56 F.3d 469, 474 (2d Cir. 1995).  However, "expenses incurred merely to

20  notify [CRAs] of inaccurate credit information, and not to force their compliance with any

21  specific provision of the statute, cannot be compensable as 'actual damages' for a

22  violation of the FCRA."  Id.  Applying this distinction, plaintiff's current damages

23  allegations amount to no more than expenses to notify furnishers and CRAs of the

24  alleged inaccuracies.  This is a process that FCRA contemplates, 15 U.S.C. § 1681s-

25  2(a)(1)(B)(i), and is thus not itself a source of damages resulting from an FCRA violation.

26     The court therefore finds that the complaint as pleaded does not sufficiently allege

27  actual damages.  However, although the complaint currently does not allege emotional

28  distress damages, plaintiff's counsel represented at the hearing that he intended to

United States District Court
Northern District of California

1   amend the complaint to add allegations of emotional distress.  Damages for "emotional

2   distress and humiliation" as a result of an FCRA violation are recoverable as actual

3   damages in the Ninth Circuit.  Guimond, 45 F.3d at 1333.  Thus, the court will grant

4   plaintiff leave to amend to plead facts showing actual damages.

5           **4.     The CCRAA Claim**

6           California Civil Code § 1785.25(a) provides that "[a] person shall not furnish

7   information on a specific transaction or experience to any consumer credit reporting

8   agency if the person knows or should know the information is incomplete or inaccurate."

9   Just as in FCRA, inaccuracy is a required element as the statutory language explicitly

10  requires that "the information is incomplete or inaccurate."  Cal. Civ. Code § 1785.25(a).

11  In general, CCRAA "mirrors" FCRA, such that the CCRAA claim survives only to the

12  extent that the FCRA claim survives.  Guimond, 45 F.3d at 1335; Olson v. Six Rivers

13  Nat'l Bank, 111 Cal. App. 4th 1, 12 (2003) ("Because [CCRAA] is substantially based on

14  [FCRA], judicial interpretation of the federal provisions is persuasive authority and entitled

15  to substantial weight when interpreting the California provisions.").  Because the court

16  has concluded that the FCRA claim must be dismissed for failure to sufficiently plead an

17  actual inaccuracy and damages, the CCRAA claim must be dismissed as well, with leave

18  to amend, for the same reasons.

19                              **CONCLUSION**

20          For the foregoing reasons, defendants' motions to dismiss are GRANTED.

21  Plaintiff is granted leave to file an amended complaint within 21 days of the date of this

22  order.  The amended complaint must sufficiently plead actual inaccuracies based upon,

23  e.g., (i) a failure to report the fact of the bankruptcy filing or to use the correct CII D

24  indicator; or (ii) a failure to report that an account is being disputed.  Plaintiff may not rely

25  on a failure to update account balances to reflect the confirmed Chapter 13 plan, and

26  may not rely on the failure to comply with Metro 2 standards—except as those standards

27  pertain to actual inaccuracies, such as a failure to note the bankruptcy filing or the

28  disputed nature of the account.  The amended complaint must also sufficiently allege

either statutory or actual damages.  The amended complaint may not add new claims or parties without leave of court or the consent of defendants.

Following the hearing, Experian also filed a motion to dismiss the complaint making the same arguments, among others, as the moving defendants.  <u>See</u> Dkt. 52. Should this motion be fully briefed, the court would undoubtedly rule the same way on the same issues.  In order to avoid the expenditure of resources by the parties and the court, the court administratively TERMINATES Experian's motion and VACATES the May 10, 2017 hearing date.  After the amended complaint is filed, Experian may file a new motion to dismiss directed to the amended factual allegations, or it may notify the court that it wishes to reactivate its administratively terminated motion.

**IT IS SO ORDERED.**

Dated: March 20, 2017

_____

PHYLLIS J. HAMILTON
United States District Judge